IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 14, 2026

**KIMBERLY ANN SCOTT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Wilson County**
**Nos. 15-CR-1203, 17-CR-334    Brody N. Kane, Judge**

———————————————————

**No. M2024-01671-CCA-R3-PC**

———————————————————

The Petitioner, Kimberly Ann Scott, pled guilty in separate cases to one count of second degree murder and one count of reckless endangerment. The trial court imposed an effective sentence of nineteen years. Thereafter, the Petitioner filed a petition for post-conviction relief alleging that her guilty plea was not knowingly, voluntarily, and intelligently entered and that she was denied the effective assistance of counsel during the plea process. Following an evidentiary hearing, the post-conviction court denied relief, and the Petitioner appealed. Upon our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

W. J. Bo Ladner, III, Nashville, Tennessee, for the appellant, Kimberly Ann Scott.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Jason Lawson, District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    THE INDICTMENT AND PLEA AGREEMENT

On July 8, 2019, the Petitioner pled guilty to one count of second degree murder and one count of reckless endangerment.  In exchange, the State dismissed several remaining charges and reduced the first degree premeditated murder charge.  The trial court sentenced the Petitioner as a Range I, standard offender for the murder conviction and as a Range II, multiple offender for the reckless endangerment conviction.  The resulting effective sentence was nineteen years, with the fifteen-year murder sentence to be served at 100%.

At the plea hearing, the Petitioner was represented by trial counsel and co-counsel.[1] The trial court placed the Petitioner under oath and reviewed the terms of the plea agreement.  The Petitioner confirmed that she had reviewed the agreement with both lawyers, was satisfied with counsel's representation, and understood the constitutional rights she was waiving.  She also acknowledged that the decision to plead guilty was hers alone and that she was entering the plea voluntarily.  When asked about the suppression motion that counsel had litigated, she confirmed that the ruling had not affected her decision to plead guilty.  She had no questions for the court or trial counsel.

The State then presented the factual basis for the charges.  According to the State's proof, the Petitioner and her son went to the victim's residence during the early morning hours of March 11, 2017.  A witness inside the home heard yelling and saw the victim answer the door, where the Petitioner and her son were standing on opposite sides of the porch.  After the son pointed a firearm at the victim, the witness fled the residence and heard multiple gunshots.  The victim later died from multiple gunshot wounds.  The State also asserted that the witness identified the Petitioner in a lineup and that the Petitioner admitted she had gone to the residence because of a preexisting dispute with the victim.

---

[1]    The post-conviction petition does not separate its ineffective assistance claims between these two attorneys.  As such, we focus our review on trial counsel's conduct except where co-counsel's testimony or actions bear directly on the issues presented.

With respect to the reckless endangerment charge, the State asserted that the Petitioner drove the wrong way on North Green Hill Road on October 12, 2014, nearly colliding head-on with a sheriff's deputy before crashing her vehicle. The Petitioner admitted that she had consumed alcohol and medication before the incident. The trial court accepted the Petitioner's plea as having been knowingly and voluntarily entered.

## B.  PETITION FOR POST-CONVICTION RELIEF

The Petitioner later filed a timely pro se petition for post-conviction relief alleging that her plea was involuntary and unknowing and that she received the ineffective assistance of counsel. She alleged that trial counsel presented the plea agreement only one day before the hearing, pressured her into accepting it without adequate explanation, and failed to review all discovery with her. She also asserted that trial counsel filed only one substantive pretrial motion and that the negotiated plea agreement was not in her best interest.

At the evidentiary hearing on September 12, 2024, trial counsel, co-counsel, and the Petitioner testified.[2] According to trial counsel, she and co-counsel visited the Petitioner approximately twenty-seven times, with most meetings lasting between ninety minutes and two hours. During those visits, they repeatedly reviewed discovery, discussed strategy and their investigative findings, and directed investigators to interview witnesses the Petitioner had identified. Counsel also arranged for a mental evaluation addressing competency and a possible insanity defense, litigated a motion to suppress, and filed numerous additional motions and notices.

Trial counsel further testified that the final plea agreement followed extended negotiations with the State. Counsel explained that the State initially proposed a plea requiring the Petitioner to serve twenty-five years and that counsel later made a counteroffer with the Petitioner's authorization. The State ultimately presented the final agreement to the Petitioner on July 1, 2019, one week before the plea hearing.

According to trial counsel, she visited the Petitioner again on the day before the plea hearing and reviewed the written agreement in detail, including the available options and

---

[2] The post-conviction court originally dismissed the post-conviction petition on the basis that it did not state a colorable claim. This court reversed that holding and remanded the case for an evidentiary hearing. *See Scott v. State*, No. M2020-01023-CCA-R3-PC, 2021 WL 5918318, at *1 (Tenn. Crim. App. Dec. 15, 2021), *no perm. app. filed*.

the risks of proceeding to trial on the first degree murder charge. Trial counsel testified that the Petitioner never indicated that she felt pressured or expressed a desire to reject the plea agreement.

For his part, co-counsel testified that he was present with trial counsel when the final plea agreement was presented to the Petitioner on July 1, 2019. He stated that the Petitioner appeared excited about the offer and that he was satisfied she understood the terms of the agreement. He also confirmed that neither attorney pressured the Petitioner into accepting the plea and that the decision to plead guilty was the Petitioner's alone.

The Petitioner testified on direct examination that she felt like she had to accept the plea agreement rather than proceed to trial. She described the plea form review as having been conducted in a rush. When asked on cross-examination how many times trial counsel visited her in jail, she estimated about a dozen, though she acknowledged that she could not be certain given the passage of time.

On cross-examination, the Petitioner acknowledged that counsel had offered her the choice between pleading guilty and proceeding to trial and that she chose to plead guilty. She further acknowledged that trial counsel did advise her, though she characterized that advice as having been delivered abruptly. She recognized her signature on the plea agreement, confirmed that this was not her first guilty plea, and acknowledged familiarity with the plea process. She also acknowledged that the trial court asked whether the decision to plead guilty was her own and that she answered yes, though she added that she did not know the consequences of answering otherwise.

## C.    POST-CONVICTION COURT'S ORDER

On September 30, 2024, the post-conviction court denied relief. Resolving all credibility disputes in favor of trial counsel, the court found that the Petitioner's testimony was inconsistent with the corroborating proof. The court specifically found that the Petitioner's testimony concerning the timing and circumstances of the plea agreement was "simply untrue" and that no evidence supported her claim that she believed the case would proceed to trial until immediately before the plea hearing.

The post-conviction court concluded that the Petitioner understood her available options and chose to accept the plea agreement to avoid the risk of a life sentence. Finding no credible evidence of coercion, the court determined that the plea-hearing transcript demonstrated the plea was knowingly and voluntarily entered. The court also denied the

ineffective assistance claim, concluding that the Petitioner failed to establish deficient performance or prejudice.  This appeal followed.

## STANDARDS OF APPELLATE REVIEW

Our supreme court has recognized that a reviewing court must first identify the appropriate standard of review for each issue presented.  *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022).  In this case, the Petitioner argues that her guilty plea was not knowingly and voluntarily entered and that she was denied the effective assistance of counsel during the plea process.  Both claims present mixed questions of law and fact.  *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (guilty plea validity); *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001) (ineffective assistance of counsel).  Accordingly, we review the post-conviction court's conclusions of law and its application of law to its factual findings de novo without a presumption of correctness.  *See Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020).  The post-conviction court's underlying factual findings may not be disturbed unless the evidence preponderates against them.  *Id.*

## ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2025).  A post-conviction petitioner has the burden of proving his or her allegations of fact by clear and convincing evidence.  *Id.* § 40-30-110(f) (2025).  For evidence to be clear and convincing, "it must eliminate any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (citation and internal quotation marks omitted).

The Petitioner contends that the post-conviction court erred in denying relief.  More specifically, she asserts that her guilty plea was not knowingly, voluntarily, and intelligently entered because trial counsel failed to communicate adequately with her, failed to review discovery adequately, and failed to investigate the case properly.  She argues that these alleged deficiencies prevented her from making an informed decision regarding the plea agreement.  Because "the effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea," *Hill v. Lockhart*, 474 U.S. 52, 56 (1985), we begin

by addressing the Petitioner's allegations concerning trial counsel's performance before turning to the remaining circumstances surrounding the plea.

### A.    TRIAL COUNSEL'S PERFORMANCE

When a defendant challenges the validity of a guilty plea on the basis of trial counsel's alleged ineffective assistance, the court must assess counsel's performance to determine whether those deficiencies, if any, rendered the plea unknowing or involuntary. *See Hill*, 474 U.S. at 56-57. The framework requires a petitioner to establish both that "counsel's representation fell below an objective standard of reasonableness," and that she suffered resulting prejudice. *See Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

In the context of a guilty plea, prejudice means a showing "that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see Taylor v. State*, 443 S.W.3d 80, 84-85 (Tenn. 2014). Because a petitioner bears the burden of establishing both elements, "a court need not address both concepts if the petitioner fails to demonstrate either one of them." *Garcia*, 425 S.W.3d at 257.

The Petitioner argues that the post-conviction court erred in denying relief because the evidence established that trial counsel's performance was deficient in two respects: counsel failed to communicate with her adequately and review the discovery, and counsel failed to investigate her case adequately. The State responds that neither claim is supported by the post-conviction court's findings or by the record. We address each claim in turn.

### 1.    Communication and Review of Discovery

The Petitioner argues that the post-conviction court erred in denying relief on her claims that trial counsel failed to communicate or review discovery with her adequately. The State responds that the record, including the credited testimony of trial counsel and supporting documentation, establishes extensive communication throughout the representation and supports the post-conviction court's determination on this claim. We agree with the State.

When a post-conviction petitioner alleges inadequate communication, the focus is not simply on the number of meetings between counsel and the petitioner. Instead, the

inquiry is whether counsel was able to exchange the information necessary for informed decision-making regarding the case. As this court has explained, the relevant question is whether counsel and the petitioner were able to discuss "the facts of the case, the application of the law, significant case developments, and the petitioner's objectives" so that informed decisions could be made. *Hall v. State*, No. M2021-01555-CCA-R3-PC, 2023 WL 2726780, at *7 (Tenn. Crim. App. Mar. 31, 2023), *no perm. app. filed*.

The post-conviction court accredited trial counsel's testimony and rejected the Petitioner's contrary testimony. The credited proof established that trial counsel visited the Petitioner approximately twenty-seven times during the representation, with most meetings lasting between ninety minutes and two hours. During those meetings, counsel reviewed discovery materials, discussed the Petitioner's version of events, reported investigative findings, addressed possible defenses, and answered the Petitioner's questions. Trial counsel also testified that all discovery, including recordings and video evidence, was reviewed with the Petitioner and that much of the material was reviewed repeatedly. The post-conviction court credited that testimony and found that counsel reviewed the discovery "in great detail and in a competent manner."

The Petitioner failed to identify what additional communication or discovery review would have provided, what information she lacked, or how any alleged deficiency affected her understanding of the plea agreement or her available options. Nor did she establish that she was unable to make an informed decision regarding the plea because of any alleged communication deficiency. *See McWilliams v. State*, No. E2017-00275-CCA-R3-PC, 2017 WL 5046354, at *4 (Tenn. Crim. App. Nov. 2, 2017), *no perm. app. filed*. She likewise failed to establish that additional meetings would have improved counsel's preparation or altered her decision to plead guilty. *See Williams v. State*, No. M2007-02070-CCA-R3-PC, 2008 WL 5272556, at *5 (Tenn. Crim. App. Dec. 19, 2008), *perm. app. denied* (Tenn. Apr. 27, 2009).

Accordingly, the Petitioner has not shown that the post-conviction court erred in concluding that she failed to establish her claim of ineffective assistance of counsel by clear and convincing evidence.

### 2. Trial Counsel's Investigation

The Petitioner next argues that the post-conviction court erred in denying relief on her ineffective assistance of counsel claim based on trial counsel's alleged failure to investigate the case adequately. The State responds that the evidence does not preponderate

against the post-conviction court's findings and that its findings support the court's denial of relief on this basis. We again agree with the State.

An attorney's duty to investigate "derives from counsel's basic function to make the adversarial testing process work in the particular case." *Nesbit v. State*, 452 S.W.3d 779, 796 (Tenn. 2014) (citation and internal quotation marks omitted). Counsel must either conduct a reasonable investigation or make a reasonable decision that further investigation is unnecessary. *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 691). However, a petitioner alleging inadequate investigation must demonstrate what a reasonable investigation would have uncovered. *Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *8 (Tenn. Crim. App. May 31, 2024), *perm. app. denied* (Tenn. Oct. 24, 2024). And when the claim involves uncalled witnesses, the petitioner generally must present those witnesses at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *Taylor v. State*, 443 S.W.3d 80, 85 (Tenn. 2014).

The post-conviction court found that counsel's investigation was well documented and that the Petitioner failed to prove otherwise. The credited proof established that counsel conducted a substantial investigation. Counsel retained two investigators, who interviewed witnesses identified by the Petitioner, including the Petitioner's co-defendant. Counsel also arranged a psychological evaluation to explore competency issues and the possibility of a mental-health defense. In addition, counsel filed numerous pretrial motions, extensively litigated a motion to suppress the Petitioner's statements to law enforcement, and engaged in lengthy plea negotiations that substantially reduced the Petitioner's sentencing exposure from the State's original offer.

The Petitioner presented no witnesses or other evidence at the post-conviction hearing demonstrating what additional investigation would have uncovered or how any further inquiry would have altered her decision to plead guilty. As we have recognized, courts may not speculate about evidence that was not presented at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *Millan v. State*, No. E2021-00366-CCA-R3-PC, 2023 WL 1489780, at *33 (Tenn. Crim. App. Feb. 3, 2023), *no perm. app. filed*. As such, the record supports the post-conviction court's conclusion that the Petitioner failed to establish ineffective assistance of counsel arising from counsel's investigation of the case.

## B. THE VALIDITY OF THE GUILTY PLEA

Having concluded that the Petitioner failed to establish any deficiency in trial counsel's communication, discovery review, or investigation, we turn to the remaining circumstances surrounding the plea itself.

A guilty plea results in the waiver of several fundamental constitutional rights, including the privilege against self-incrimination, the right to trial by jury, and the right to confront adverse witnesses. *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). Accordingly, due process requires that a guilty plea be entered knowingly, voluntarily, and intelligently. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010); *see Frazier v. State*, 495 S.W.3d 246, 253 (Tenn. 2016). The relevant inquiry is whether the plea represented "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

Whether a plea was entered knowingly and voluntarily is determined from the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see Rigger v. State*, 341 S.W.3d 299, 308-09 (Tenn. Crim. App. 2010). Relevant considerations include the defendant's intelligence, familiarity with criminal proceedings, opportunity to confer with counsel, understanding of the charges and penalties, and reasons for entering the plea. *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006).

Beyond her allegations regarding counsel's performance, the Petitioner argues that she had not reviewed all discovery, wanted to proceed to trial, felt pressured into accepting the plea agreement, and did not understand the difference between consecutive and concurrent sentencing. The State responds that the record does not support those claims and that the post-conviction court properly rejected the Petitioner's testimony as not credible. We agree with the State.

The post-conviction court found the Petitioner's testimony concerning the plea process to be "simply untrue" and rejected any claim that counsel pressured or threatened her. Instead, it found that the Petitioner understood her available options and chose to accept the agreement to avoid the possibility of spending the remainder of her life in prison. The record supports those findings.

The credited testimony established that trial counsel presented the plea offer to the Petitioner on July 1, 2019, one week before the plea hearing. The Petitioner agreed to

accept the offer during that meeting. Counsel returned to the jail on July 7 and reviewed the written agreement with the Petitioner in detail before obtaining her signature. Co-counsel confirmed that the Petitioner appeared "excited" about the terms and that he was satisfied she understood them fully. He further confirmed that neither attorney pressured the Petitioner into pleading guilty and that the decision was hers alone.

On cross-examination, the Petitioner acknowledged that counsel had discussed her available options, including the right to proceed to trial, and that she ultimately chose to plead guilty. The Petitioner also acknowledged her prior familiarity with the plea process and confirmed that she had graduated from high school and completed some college coursework.

At the plea hearing, the trial court placed the Petitioner under oath, reviewed the terms of the agreement, confirmed her educational background, and gave her an opportunity to ask questions. The Petitioner stated that she understood the rights she was waiving, that her decision to plead guilty was voluntary, and that she made the decision herself. Trial counsel also confirmed on the record that counsel had reviewed the evidence, the facts, and the available options with the Petitioner, including the option to proceed to trial. The Petitioner affirmed that she was satisfied with counsel's representation and that she had no concerns about counsel's preparation.

As this court has recognized, "[a] defendant's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations carry a strong presumption of verity." *Mumphrey v. State*, No. W2021-01439-CCA-R3-PC, 2023 WL 2028767, at *7 (Tenn. Crim. App. Feb. 16, 2023) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. June 7, 2023); *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Petitioner's post-conviction testimony directly contradicted those sworn declarations.

The Petitioner has not shown that the post-conviction court erred in its determination that the Petitioner entered the plea knowingly, voluntarily, and intelligently. The proof established that the Petitioner had prior experience with guilty pleas, consulted extensively with counsel, understood the charges and potential penalties, and chose to accept the agreement to avoid the risk of a life sentence. The Petitioner is not entitled to post-conviction relief.

## CONCLUSION

In summary, we hold that the record supports the post-conviction court's finding that the Petitioner's guilty plea was knowingly, voluntarily, and intelligently entered and that she was not denied the effective assistance of counsel in the plea process. We respectfully affirm the judgment of the post-conviction court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE